**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

UNITED STATES FIDELITY AND
GUARANTY COMPANY                                                              PLAINTIFF

v.                                              CIVIL ACTION NO. 3:06-CV-00479-HTW-LRA

HUDSON, EVERETT, SIMONSON,
MULLIS & ASSOCIATES, INC.; LARRY
MILLER, JIM SIMONSON, WILL IRBY,
and KEYES MECHANICAL, INC.                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the court is a declaratory judgment action brought by the plaintiff United States Fidelity and Guaranty Company (hereinafter "USF&G") under Title 28 U.S.C. §§ 2001 and 2002[1] against Hudson, Everett, Simonson, Mullis & Associates (hereinafter "HESMA"), Keyes Mechanical, Inc. (hereinafter "Keyes"), as well as the individual defendants Larry Miller, Jim Simonson, and Will Irby.  USF&G seeks a declaration of its rights and obligations under two policies of commercial general liability

---

[1] Title 28 U.S.C. § 2201 provides in part that, "(a) [i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Title 28 U.S.C. § 2202 provides that, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

insurance, both numbered BK01405476 and issued to the Associates from May 3, 2003, to May 3, 2004, ("First Policy");  and from May 3, 2004, to May 3, 2005 ("Second policy").  The underlying state court claims by Keyes assert professional and advertising injury (libel/slander) against the Associates (HESMA) and its employees, the individual defendants above listed.  USF&G now files its motion for summary judgment pursuant to Rule 56 (a) and (c) of the Federal Rules of Civil Procedure,[2] asking this court to find that it's policies provide no coverage under the circumstances of this case, and to dismiss the counterclaims of HESMA and Keyes.

The parties are diverse, and a demand is made in excess of this court's jurisdictional minimum; thus, this court has subject matter jurisdiction pursuant to Title 28 U.S.C. § 1332.[3]  Where subject matter jurisdiction otherwise exists, such as diversity jurisdiction under § 1332(a), the Declaratory Judgment Act clearly authorizes this court to afford the parties declaratory relief.  *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir.

---

[2]Rule 56(a) of the Federal Rules of Civil Procedure provides that, "[a] party seeking to recover upon a claim, counterclaim, crossclaim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

Rule 56 (c) of the Federal Rules of Civil Procedure provides in pertinent part: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[3]Title 28 U.S.C. § 1332 provides in pertinent part that, "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States; ... ."

1997). This court, having heard oral argument and being fully informed of the relevant facts and law, finds that summary judgment in favor of USF&G is warranted, for the reasons outlined below.

## **STATEMENT OF THE CASE**

USF&G's declaratory complaint asks this court to find that it has no duty to defend or to provide indemnity to HESMA, Miller, Simonson, or Irby in the underlying litigation. Because of its interest in any insurance coverage provided to HESMA, Miller, Simonson, and Irby in the underlying state court litigation, USF&G has named the plaintiff Keyes in the state court litigation as a defendant here. All these defendants have answered and counterclaimed against USF&G, seeking declaratory relief and asserting claims for breach of contract, and for bad faith refusal to provide benefits under the two policies. Keyes' answer and counterclaim against USF&G seek only declaratory relief.

USF&G argues that the claims of Keyes Mechanical against the defendants in the underlying action are (1), outside the first policy period; and (2), fall within the professional services exclusion of the second policy. All parties now agree that, as the pleadings currently are presented, no coverage is obtainable under the first policy. Thus, the dispute at hand involves only the second policy.

HESMA responds that it is entitled to an unqualified defense and indemnity under the "personal injury" or "advertising injury" coverage of the second policy. This argument, says HESMA, is based upon the language in the second policy which defines "personal injury," in relevant part, as "publication of 'insured material' that slanders or libels a person or organization or disparages a person's or organization's

3

goods, products or services." This language, argues USF&G, is inapplicable to this case since the Keyes Mechanical claims in the underlying state court lawsuit are subject to the second policy's professional services exclusion.

## FACTUAL BACKGROUND

HESMA is a professional consulting engineering firm, providing consulting engineering services and construction administration services in the areas of mechanical, electrical, plumbing, fire protection, and specialty lighting. It employs professional engineers, designers, and computer-aided design operators. Its clients are usually architects, developers, and owners. HESMA's services include: (1) assisting the architect in evaluating bids; (2) making sure that the project is in budget; (3) monitoring the progress of construction on the systems that it has designed; (4) making sure that the work is being performed properly; (5) approving pay requests of subcontractors; and (6) monitoring quality control.

The instant dispute involves the renovation of the Electric Building in downtown Jackson, Mississippi. HESMA and the individual defendants undertook to provide consulting services to Johnson, Bailey, Henderson, McNeel Architects, P.A. (hereinafter "Architects"). These services included engineering and construction administration on the air conditioning, plumbing, and fire protection areas of the Electric Building project (the "Project"). The contract[4] into which HESMA entered with the Architects provided,

---

[4] The contract between HESMA and the Architects is based on the standard American Institute of Architects (AIA) document provided to HESMA by the Architects. HESMA's 30(b)(6) representative Will Irby acknowledged this in his deposition. Irby also acknowledged that HESMA's services included obtaining bids from subcontractors and evaluating them. *See* Deposition of HESMA by and through William P. Irby at pages 30-36.

among other things, that HESMA would "assist the Architects in obtaining and evaluating bids or negotiated proposals, and assist in awarding and preparing contracts for construction or installation." USF&G notes that HESMA has agreed during discovery that this type of assistance constitutes professional services.

According to HESMA, the Project was "high-profile" and presented difficulties in the area of mechanical design because: (1), the age of the building caused the floor-to-ceiling heights to be low which affected mechanical design and implementation; and (2), fiber optic systems in the building, called the "lifeboat," could not be altered or damaged and had to remain operational during construction. Consequently, because of these "lifeboat" issues on the Project, namely the complexity of the Project, and the age of the building, the Architects emphasized that they wanted only mechanical subcontractors that HESMA could recommend as being the very best in the business. Based on this instruction, HESMA's employee Larry Miller prepared an "invited bidders" list of recommended mechanical subcontractors for the architect in November of 2003. The defendant Keyes Mechanical, says USF&G, was not on the initial invited bidders list.

In late April or May 2004, although HESMA advised against it, the Architects decided to open the bidding on the mechanical portion of the Project to mechanical subcontractors other than those on HESMA's "invited bidders" list. Keyes Mechanical and South Central, another mechanical subcontractor who also was not on the initial list prepared by HESMA, were contacted and asked to submit bids on the Project. Following the opening of the bids on the mechanical portion of the Project, Miller called three of the four mechanical subcontractors on the "invited bidders" list to advise them

that the Architects had decided to open the bidding on the mechanical portion of the contract to anyone who was bonded and who could qualify.  USF&G says that some of the mechanical subcontractors Miller called advised him that they would not submit a bid because they could not compete with the lower prices that would be bid if the process was open to any business that could qualify and obtain a bond.

USF&G says that on June 2, 2004, a "pre-bid meeting" for the mechanical work on the Electric Building took place.  HESMA says that this pre-bid meeting was one of the services it provided.  Larry Miller, the employee of HESMA who prepared the "invited bidders" list, attended the pre-bid meeting on behalf of HESMA in order to answer any questions that would be asked by the mechanical subcontractors.  Miller was approached at this meeting by Leonard Roberts ("Roberts") of J.L. Roberts, Inc., one of the four mechanical subcontractors on the "invited bidders" list.  Roberts had not been informed by Miller that the Architects had opened the bidding to any business that could qualify and obtain a bond.  Roberts asked why representatives for Keyes Mechanical were at the pre-bid meeting since the project was supposed to be for invited bidders only.  Miller told Roberts that the Architects, not HESMA, had decided to open the bidding to anyone who could qualify. Roberts then said that he would not bid the Project.  At this point, says USF&G, Miller, fearful that none of HESMA's recommended mechanical contractors would bid on the Project,  asked Roberts to reconsider withdrawing his bid.  The instant dispute begins here.

Miller told Roberts that he had experienced problems with Keyes Mechanical and did not want that company on the job.  As fate would have it, someone overheard Miller's comment and told Keyes what Miller had said.   Now, Miller, on behalf of

HESMA, says that his comments were not intended to slander, but were meant to express his professional judgment from previous work and experiences with Keyes Mechanical.  Miller says that this was a statement consistent with his function as a consultant performing construction administration services for the Architects.  Miller also says that his only reason for saying what he said at the pre-bid meeting was to see that the Architects got the best mechanical contractor available.

Following the pre-bid meeting, the general contractor on the project had his own meeting to explore ways to cut costs.  On June 14, 2004, the meeting was conducted by Tom Black of Harrell Construction, the general contractor.  At this meeting Miller, speaking for HESMA, said he could not recommend Keyes Mechanical.  When Miller was asked by Black why HESMA could not recommend Keyes, Miller, Simonson, and Irby all advised that HESMA had encountered some problems with Keyes' work in the past.  Miller, Simonson, and Irby then went on to give Black specific examples of projects of which they had knowledge, projects on which Keyes had worked, where problems had developed.  USF&G submits that Miller, acting for HESMA, simply was endeavoring to give Black a candid assessment in order to produce the best possible project as part of its professional services to the Architects.

The parties do not dispute that after the June 14, 2004, meeting with the general contractor, Tom Black called Phillip Keyes of Keyes Mechanical, and allegedly advised him that HESMA was saying "bad things" about Keyes' business, and that he was "shocked" by the comments.  Black also allegedly stated that this could be devastating to Keyes' business.

Consequently Keyes Mechanical filed a lawsuit against HESMA, Miller,

Simonson, and Irby on August 31, 2004, in the Circuit Court for the First Judicial District of Hinds County, Mississippi, alleging defamation, interference with prospective business advantage, and civil conspiracy/aiding and abetting. Keyes Mechanical later amended the state court complaint to include a claim of negligent defamation. HESMA began to assess its situation in order to determine from which of its insurers it should seek a defense and indemnity.

A series of e-mail messages submitted by USF&G show that one Hugh Holley, a certified underwriter with Professional Liability Brokers/IOA, reported to John W. Raynor, and to the defendants Will Irby, Jim Simonson, and Larry Miller, that coverage for libel and slander was provided by St. Paul Travelers Insurance Company, and that St. Paul should not be released from its responsibility. Holley also noted that CNA Financial Services, which the parties agree provides professional liability coverage to the defendants, had offered to provide a defense in the Keyes Mechanical matter. And, even though CNA's representative referred to CNA's exclusion in its professional liability policy for libel as an intentional act, these e-mails establish that the defendants had choices regarding insurance coverage for the defense and, if necessary, indemnification with regard to the Keyes Mechanical lawsuit.

Ultimately, the defendants chose to look to USF&G for defense of the lawsuit under the two aforementioned policies[5], only one of which now is in issue. USF&G

---

[5]USF&G says that HESMA opted not to make a claim on it's CNA policy because the USF&G Policies do not require the payment of a deductible. The correspondence on this matter says that HESMA will have to call upon CNA if its "GL" insurer does not indemnify.

contends that its policy offers general liability coverage only[6], and specifically excludes coverage for injury incurred as the result of rendering professional services.  USF&G also notes that HESMA has acknowledged in discovery that its participation in the June 2, 2004, pre-bid meeting and the June 14, 2004, meeting was part of the professional services it provided to the architects.  Thus, USF&G issued a reservation of rights letter to HESMA in October of 2004.   After proceeding to defend the defendants in state court, USF&G filed this lawsuit on August 31, 2006, having finally determined that its policies afforded no coverage to HESMA.

## **THE USF&G INSURANCE POLICIES**

USF&G issued two commercial general liability insurance policies to HESMA during the period in question.  The parties now agree that, as the pleadings now are presented, the first policy provides no coverage because it had expired before the events in question occurred.

The second general liability policy provides the following regarding coverage for "Personal injury" and "Advertising injury":

b. This insurance applies to:
***
    (2) "Personal injury":
        (a) Arising out of your business; and
        (b) Caused by an offense committed in the "coverage territory" and during the
        period that this "personal injury" liability coverage is in effect; or
    (3) "Advertising injury":

---

[6]For example, USF&G says that if HESMA's coffee pot was left on overnight and caught fire, causing damage to HESMA's office an a neighboring property, this would be covered by USF&G's general liability policy.

(a) Arising out of the "advertising" of your goods, products or services; and

(b) Caused by an offense committed in the "coverage territory" and during the period that this "advertising injury" liability coverage is in effect.

***

The Second Policy provides the following coverage exclusion for "Professional Services:"

2. **Exclusions Applicable To The Liability Coverage**

***

l. "Professional Services"

(1) *This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of any rendering of, or failure to render, any "professional services" by or on behalf of any insured.*

***

The Second Policy provides the following potentially relevant definitions:

**SECTION V. DEFINITIONS**

1. "Advertising" means attracting the attention of other persons or organizations by any means for the purpose of seeking customers or supporters or increasing sales or business.

***

3. "Advertising injury" means injury, other than "bodily injury" or "personal injury", caused by one or more of the following offenses:

a. Publication of "insured material", in your "advertising", that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

***

18. "Insured material"

a. Means any material in any form of expression, including material published in or with any electronic means of communication, such as the Internet; ...

***

24. "Personal injury" means injury, other than "bodily injury" or "advertising

injury", caused by one or more of the following offenses:

***

d. Publication of "insured material" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; ...

***

27. "Professional services" means any service requiring specialized skill or training, including any: a. Legal, accounting, "advertising", real estate, travel or consulting service;  b. Claim, investigation, adjustment, appraisal, survey, audit, or inspection service;

***

p. Preparation, approval, or failing to prepare or approve any map, shop drawing, opinion, report, survey, field order, change order, design, specification, recommendation, permit application, payment request,
manual, instruction, computer program for design system, or selection of a contractor or sub-contractor;

q. Inspection, architectural or engineering activity or service, construction contractor or construction management service;

***

USF&G, based on the exclusion of coverage for injury arising from professional services contained in the second policy, now seeks a declaratory judgment from this court that it is not required to provide a defense and, in the event of an adverse judgment, that it is not liable to provide indemnification to the defendants for the claims of Keyes Mechanical in the Hinds County, Mississippi, lawsuit.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. Proc. 56(c). The United States Supreme Court has held that summary judgment is

mandated against a party who "after adequate time for discovery and upon motion, ... fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, furnish materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323-24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. Summary judgment can be granted only if no genuine issue of material fact exists. Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Service Corporation v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962).

## APPLICABLE LAW

Under Mississippi law, insurance policies are to be interpreted like any other contract, according to the plain meaning of the terms of that contract. *Providence Life and Accident Insurance Company v. Goel*, 274 F.3d 984, 991-92 (5th Cir. 2001). A provision in an insurance policy that is plain and unambiguous must be enforced as

written.  *Goel*, 274 F.3d at 991-92.  Applying this standard to the instant policy, this court is persuaded by USF&G's argument that it has no duty to defend or indemnify HESMA because of the professional services exclusion.

Additionally, the Mississippi Supreme Court has adopted a definition of "professional services" as services involving, "the application of special skill, knowledge and education arising out of a vocation, calling, occupation or employment." *Burton v. Choctaw Company*, 730 So. 2d 1, 6 (Miss. 1997).[7]  As set forth above, the professional services injury exclusion provides that the insurance coverage,

> does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of any rendering of, or failure to render, any "professional services" by or on behalf of any insured."  The policy defines "professional services" as, "*any service requiring specialized skill or training*, including ... a. Legal, accounting, "advertising", real estate, travel or consulting service;  b. Claim, investigation, adjustment, appraisal, survey, audit, or inspection service; ... **p**. Preparation, approval, or failing to prepare or approve any map, shop drawing, opinion, report, survey, field order, change order, design, specification, *recommendation*, permit application, payment request, manual, instruction, computer program for design system, or *selection of a contractor or sub-contractor*;    **q**. Inspection, architectural or engineering activity or service ... (emphasis added).

This court has located no Mississippi case which directly addresses a professional services exclusion in a general liability policy where a defense and indemnity are sought by the insured for an alleged defamation injury.  USF&G has

---

[7]USF&G also cites *Tradewinds Escrow, Inc. v. Truck Ins. Exchange*, 118 Cal. Rptr.2d 561, 568 (Cal. Ct. App. 2002), and *Antles v. Aetna Cas. & Surety Co.*, 34 Cal. Rptr. 508, 513 (Cal. Ct. App. 1963), cases holding that the unifying factor regarding whether a circumstance falls within the professional services exclusion is whether injury occurred during the performance of the professional services, not the instrumentality of injury.

offered as persuasive authority several cases from other jurisdictions to support its contention that its policy provides no coverage for HESMA under the facts of the instant case. The first of these cases cited by USF&G is *Hurst-Rosche Engineers v. Commercial Union Ins. Co.*, 51 F.3d 1336 (7th Cir. 1995), where the insured, an engineering firm, was hired to design and supervise the construction of an apartment complex for the Housing Authority of St. Clair County, Illinois. The insured sent a letter to the company which issued the performance bond for the project advising that a particular contractor had failed to complete the project in a timely manner and had performed substandard work. The contractor sued the insured for libel and tortious interference with contract. In turn, the insured sought coverage under its commercial general liability policy. The insurer denied coverage, however, and refused to defend the insured because of the professional services exclusion in the policy. Ultimately, the court agreed with the insurer and found that the underlying claims arose from the insured's rendering of professional services. Consequently, the underlying claims fell "squarely within the professional services exclusion" to bar coverage. *Id.* at 1344. This court finds the *Hurst-Rosche* case to be similar to, if not congruent with, the instant case.[8]

---

[8]This court also has considered USF&G's citations of *Erie Ins. Group v. Alliance Environmental, Inc.*, 921 F. Supp. 537 (S.D. Ind. 1996)(court concluded that the professional services exclusion applied to the insured's actions to preclude any coverage or defense obligations under the policy); *Pekin Ins. Co. v. L.J. Shaw & Co.*, 684 N.E.2d 853 (Ill. Ct. App. 1997) (court finds that the professional services exclusion precluded coverage for professional opinions expressed by an adjuster in the course of adjusting a claim on behalf of a fire adjusting company).

## **CONCLUSION**

In the instant case, HESMA was the party responsible for making the invited bidders list and the integral party, at least initially, for recommending and approving the ultimate choice by the Architects for the mechanical engineering work on the Electric Building project. HESMA also was serving as the construction manager on the mechanical portion of the project. If the statements concerning Keyes Mechanical made by Larry Miller, the employee of HESMA who prepared the "invited bidders" list, to Leonard Roberts and others were made in the course of providing HESMA's professional services to the Architects, then any claim of injury arising from Miller's statements would be excluded under the definition of "professional services," sub-parts (p) and (q), in the USF&G policy. This court is persuaded that this is the case and rules accordingly.

Therefore, USF&G's motion for summary judgment pursuant to Rule 56 (a) and (c) of the Federal Rules of Civil Procedure is granted, and the counterclaims of the defendants HESMA and Keyes are dismissed.

**SO ORDERED AND ADJUDGED** this the 30th day of March, 2008.

s/ HENRY T. WINGATE

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

CIVIL ACTION NO. 3:06-CV-00479-HTW-LRA
Order Granting Summary Judgment